IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JILL EDWARDS,<br><br>                Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and WEBBANK,<br><br>                Defendants. | Case No.: 3:25-cv-00424<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Jill Edwards brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union") (collectively, Equifax, Experian, and Trans Union are the "CRA Defendants"), and WebBank, and states as follows:

**INTRODUCTION**

1. In this action, the CRA Defendants falsely reported to Plaintiff's potential creditors that Plaintiff was liable for numerous fraudulent accounts that in fact resulted from identity theft, in violation of 15 U.S.C. § 1681e(b). Each CRA Defendant also failed to conduct reasonable reinvestigation(s) to determine whether information Plaintiff disputed was inaccurate and failed to block, correct, and/or delete the disputed information from Plaintiff's credit file, in violation of 15 U.S.C. §§ 1681c-2 and 1681i.

2. Moreover, in this action, WebBank failed to reasonably investigate Plaintiff's disputes and review all relevant information provided by Plaintiff and/or each CRA Defendant, in violation of 15 U.S.C. § 1681s-2(b).

1

## **BACKGROUND**

3.      In 1970, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), requiring consumer reporting agencies ("CRAs") to implement and utilize reasonable procedures "to assure **maximum possible accuracy**" of the personal, private, and financial information that they compile and sell about individual consumers. 15 U.S.C. § 1681e(b) (emphasis added).

4.      In doing so, Congress recognized that:

> [the] banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

15 U.S.C. § 1681(a)(1).

5.      Accordingly, the FCRA helps ensure that CRAs "exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). CRAs' procedures should be "reasonable," i.e., "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of [] information." 15 U.S.C. § 1681(b).

6.      The preservation of one's good name and reputation is at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)).

7.  As society's "trend toward computerization" intensifies, the FCRA's relevance has only grown. In 2024, a unanimous Supreme Court—discussing the "importance of accuracy in credit reporting"—agreed that, today, "[a] credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business." *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, 601 U.S. ___ (2024) (holding §1681s-2(b) applies to federal agencies like DOE).

8.  The FCRA is meant to ensure that such consumers are given a fair shake, but *Kirtz* cited findings that "over 34% of consumers [] were able to identify at least one error in their credit reports." *Id.* The Court agreed that "[m]istakes like these can lead lenders to insist on higher interest rates or other terms that make it difficult or impossible for consumers to obtain a mortgage, auto loan, student loan, or other credit." *Id.* (internal quotations omitted).

9.  In 2022, a bipartisan congressional subcommittee called on the CFPB to investigate "longstanding problems with the practices employed by the [CRAs] in responding to consumers who challenge credit reporting errors"—opining that "consumers are experiencing no small measure of stress, frustration, and financial hardship as a result of the [CRAs'] failure to correct legitimate errors on their credit reports." *Letter to the Honorable Rohit Chopra*, House Select Subcommittee on the Coronavirus Crisis, 117th Congress (October 13, 2022).

## PARTIES

10.  Jill Edwards ("Plaintiff" or "Ms. Edwards") is a natural person residing in Vernon, Connecticut, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

11.  Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta,

Georgia 30309, and is authorized to do business in the State of Connecticut, including within this District. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

12. Defendant Experian Information Solutions, Inc. ("Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Connecticut, including within this District. Experian can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard, Glendale, California 91203. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

13. Defendant Trans Union LLC ("Trans Union") is a corporation with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Connecticut, including within this District. Trans Union can be served through its registered agent, Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, Illinois 62703. Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

14. Defendant WebBank is a corporation with a principal place of business located at 215 S State St, Ste 1000, Salt Lake City, UT 84111, and is authorized to do business in the State of Connecticut, including within this District. WebBank can be served through its registered agent, Corporation Service Company, at 15 West South Temple, Suite 600, Salt Lake City, UT, 84101. Defendant WebBank is a "Furnisher" as defined in 12 CFR 1022.41 and is a "person" as defined by 15 U.S.C. § 1681a(b).

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p (allowing FCRA claims to be brought in any "court of competent jurisdiction").

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

**Plaintiff Becomes an Identity Theft Victim**

17.     A victim of multiple data breaches, Plaintiff's identity was stolen, upon information and belief, in or around 2017.  Plaintiff disputed or attempted to dispute the accounts and correct her credit reports after discovering the fraud.

18.     On April 21, 2024, Plaintiff filed an FTC Identity Theft Report in which she identified a number of inaccurate accounts and inquires on her credit reports with each CRA Defendant, including a First Premier tradeline; two LVNV Funding Resurgent tradelines; a WebBank Fingerhut tradeline; and a WebBank Gettington tradeline.

19.     On May 1, 2024, Plaintiff also visited the Vernon Police Department and filed a police report about the fraudulent tradelines.

**Plaintiff's Dispute to Defendant Equifax**

20.     On or about June 21, 2024, Plaintiff sent a letter to dispute Defendant Equifax's inaccurate reporting.

21.     Plaintiff's letter enclosed a copy of her Connecticut driver's license and her Social Security card.  Plaintiff's letter explained that she was a victim of identity theft and attached copies of her reports with the police and the FTC.

22.     Plaintiff's letter identified the following accounts as not having been opened by

5

Plaintiff:

    a. NAME: FIRST PREMIER
       ACCOUNT NUMBER: xxxxxxxxxxx 3482
       BALANCE: $1,003
       DATE OPENED: 11/06/2018

    b. NAME: MONROE & MAIN
       ACCOUNT NUMBER: xxxxxxxx 2110
       BALANCE: $537
       DATE OPENED: 08/12/2019

    c. NAME: FINGERHUT/WEBBANK
       ACCOUNT NUMBER: xxxxxxxxxxx 8163
       DATE OPENED: 11/12/2018
       STATUS: CHARGEOFF

    d. NAME: WEBBANK/GETTINGTON
       ACCOUNT NUMBER: xxxxxxxxxxx 7409
       DATE OPENED: 11/13/2018
       STATUS: CHARGE OFF

    e. NAME: PORTFOLIO RECOVERY ASSOC
       ACCOUNT NUMBER: xxxxxxxxxxxxxxxx 7481
       BALANCE: $710
       DATE OPENED: 10/26/2021

    f. NAME: LVNV FUNDING LLC
       ACCOUNT NUMBER: xxxxxxxxxxx 7409
       BALANCE: $973
       DATE OPENED: 01/29/2020

    g. NAME: LVNV FUNDING LLC
       ACCOUNT NUMBER: xxxxxxxxxxx 4695
       BALANCE: $870
       DATE OPENED: 12/17/2019

    h. NAME: CAVALRY PORTFOLIO SVCS
       ORIGINAL CREDITOR: CITIBANK
       ACCOUNT NUMBER: ********99
       BALANCE: $505
       DATE OPENED: 03/26/2020

23. Plaintiff's FTC Affidavit listed other fraudulent tradelines and inquiries in the "Personal Statement."

24. Plaintiff's letter further stated that Equifax was inaccurately reporting her date of birth: December 18, 1969 instead of December 18, 1970.

**Plaintiff's Dispute to Defendant Experian**

25. On or about June 21, 2024, Plaintiff sent a letter to dispute Defendant Experian's inaccurate reporting.

26. Plaintiff's letter enclosed a copy of her Connecticut driver's license and her Social Security card. Plaintiff's letter explained that she was a victim of identity theft and attached copies of her reports with the police and the FTC.

27. Plaintiff's letter identified the following accounts as not having been opened by Plaintiff:

    a. NAME: CAVALRY PORTFOLIO SERVICE
       ORIGINAL CREDITOR: CITIBANK
       ACCOUNT NUMBER: 216830XX
       BALANCE: $505
       DATE OPENED: 03/26/2020

    b. NAME: MONROE AND MAIN
       ACCOUNT NUMBER: 256363XXXXXXX
       BALANCE: $537
       DATE OPENED: 08/12/2019

    c. NAME: PORTFOLIO RECOVERY ASSOCIATES
       ORIGINAL CREDITOR: CAPITAL ONE BANK USA N.A.
       ACCOUNT NUMBER: 517805XXXXXXXXXX
       BALANCE: $710
       DATE OPENED: 10/26/2021

    d. NAME: PREMIER BKCRD/FIRST PREMIER
       ACCOUNT NUMBER: 517800XXXXXXXXXX
       BALANCE: $1,003
       DATE OPENED: 11/06/2018

    e. NAME: RESURGENT/LVNV FUNDING
       ORIGINAL CREDITOR: CREDIT ONE BANK N.A.

      ACCOUNT NUMBER: 444796XXXXXXXXXX
      BALANCE: $870
      DATE OPENED: 12/17/2019

   f.  NAME: RESURGENT/LVNV FUNDING
      ORIGINAL CREDITOR: WEBBANK GETTINGTON
      ACCOUNT NUMBER: 636992XXXXXXXXXX
      BALANCE: $973
      DATE OPENED: 01/29/2020

   g.  NAME: WEBBANK/FINGERHUT
      ACCOUNT NUMBER: 636992XXXXXXXXXX
      DATE OPENED: 11/12/2018
      STATUS: Closed. $1,270 written off.

   h.  NAME: WEBBANK/GETTINGTON
      ACCOUNT NUMBER: 636992XXXXXXXXXX
      DATE OPENED: 11/13/2018
      STATUS: Closed. $973 written off

28. Plaintiff's letter further stated that the following hard inquiry was a product of identity theft and asked for it to be deleted: DT CREDIT, 11/27/2022.

### Plaintiff's Dispute to Defendant Trans Union

29. On or about June 21, 2024, Plaintiff sent a letter to dispute Defendant Trans Union's inaccurate reporting.

30. Plaintiff's letter enclosed a copy of her Connecticut driver's license and her Social Security card. Plaintiff's letter explained that she was a victim of identity theft and attached copies of her reports with the police and the FTC.

31. Plaintiff's letter identified the following accounts as not having been opened by Plaintiff:

   a.  NAME: FIRST PREMIER BANK
      ACCOUNT NUMBER: 517800678819****
      BALANCE: $1,003
      DATE OPENED: 11/06/2018

b. NAME: MONROE & MAIN
ACCOUNT NUMBER: 256363233****
BALANCE: $537
DATE OPENED: 08/12/2019

c. NAME: WEBBANK/FINGERHUT
ACCOUNT NUMBER: 636992107356****
DATE OPENED: 11/12/2018
STATUS: SOLD; WAS CHARGED-OFF

d. NAME: WEBBANK/GETTINGTON
ACCOUNT NUMBER: 636992010515****
DATE OPENED: 11/13/2018
STATUS: SOLD; WAS CHARGED-OFF

e. NAME: CAVALRY PORTFOLIO SVCS
ORIGINAL CREDITOR: CITIBANK
ACCOUNT NUMBER: 2168****
BALANCE: $505
DATE OPENED: 03/26/2020

f. NAME: LVNV FUNDING LLC
ORIGINAL CREDITOR: CREDIT ONE BANK N A
ACCOUNT NUMBER: 444796238048****
BALANCE: $870
DATE OPENED: 12/17/2019

g. NAME: LVNV FUNDING LLC
ORIGINAL CREDITOR: WEBBANK GETTINGTON
ACCOUNT NUMBER: 636992010515****
BALANCE: $973
DATE OPENED: 01/29/2020

h. NAME: PORTFOLIO RECOVERY
ORIGINAL CREDITOR: CAPITAL ONE BANK USA N A
ACCOUNT NUMBER: 517805792641****
BALANCE: $710
DATE OPENED: 10/26/2021

i. NAME: SPRING OAKS CAPITAL LLC
ORIGINAL CREDITOR: CELTIC BANK
ACCOUNT NUMBER: 11060****

      BALANCE: $736
      DATE OPENED: 07/23/2021

### Defendant Equifax Fails to Reasonably Reinvestigate Plaintiff's Dispute

32. On or about July 6, 2024, Defendant Equifax received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

33. On July 6, 2024, Defendant Equifax issued two letters to Plaintiff.

34. One letter stated that Equifax would contact the furnishers to verify the disputed information, however it would not be blocked, because the request provided was supposedly missing personal identifying information (which it in fact was not).

35. Another letter stated that Equifax was not able to verify Plaintiff's identity—despite Plaintiff's dispute having enclosed copies of Plaintiff's Social Security card, driver license, FTC Affidavit, and police report.

36. Despite the fact that Plaintiff did not receive any correspondence with the reinvestigation results, on August 10, 2024, Defendant Equifax issued a letter that explained that although it had previously removed the WEBBANK/FINGERHUT account from the Equifax credit file, it had obtained a certification from the furnisher that stated the account belongs to Plaintiff, and as a result, the account had been reinserted.

37. Upon information and belief, Defendant Equifax sent to Defendant WebBank an automated credit dispute verification ("ACDV") pursuant to Plaintiff's June 21, 2024, dispute to Defendant Equifax.

38. Upon information and belief, Defendant WebBank received Defendant Equifax's ACDV and failed to adequately investigate Plaintiff's dispute.

39. On or about September 10, 2024, Plaintiff obtained a copy of her consumer report and discovered that besides the reinserted WEBBANK/FINGERHUT tradeline, Defendant

Equifax was also reporting the WEBBANK/GETTINGTON tradeline. The other disputed tradelines were deleted.

### Defendant Experian Fails to Reasonably Reinvestigate Plaintiff's Dispute

40. On or about June 24, 2024, Defendant Experian received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

41. On July 1, 2024, Defendant Experian sent an email to Plaintiff in response to Plaintiff's dispute wherein it stated that it would not investigate Plaintiff's dispute due to a vaguely phrased concern that the dispute had not been directly sent from, or authorized by, Plaintiff.

42. On July 9, 2024, Plaintiff sent another dispute and requested that identity theft information be blocked from her credit file.

43. On July 15, 2024, Defendant Experian sent another identical email to Plaintiff in response to Plaintiff's second dispute wherein it stated that it would not investigate Plaintiff's dispute because the dispute had not been directly sent from, or authorized by, Plaintiff.

44. However, on July 17, 2024, Experian responded to Plaintiff's dispute.

45. After reviewing the dispute results, Plaintiff stated that all the inaccurate information and tradelines had been removed, with the exception of the DT CREDIT hard inquiry.

46. On or about September 2, 2024, Plaintiff obtained a copy of her Experian consumer report.

47. Upon review, Plaintiff was shocked to find that Experian had reinserted, and was still reporting, the WEBBANK/GETTINGTON and WEBBANK/FINGERHUT tradelines.

48. Upon information and belief, Defendant Experian sent Defendant WebBank an ACDV pursuant to Plaintiff's June 2024 and/or July 2024 disputes to Defendant Experian.

49. Upon information and belief, Defendant WebBank received Defendant Experian's

11

respective ACDVs and failed to adequately investigate Plaintiff's dispute.

### Defendant Trans Union Fails to Reasonably Reinvestigate Plaintiff's Dispute

50. On or about June 25, 2024, Defendant Trans Union received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

51. On June 29, 2024, Defendant Trans Union issued a letter in response to Plaintiff's dispute wherein it stated that it would not investigate Plaintiff's dispute due to a vaguely phrased concern that the dispute had not been directly sent from, or authorized by, Plaintiff.

52. On or about July 8, 2024, Plaintiff submitted another dispute and requested that the identity theft information be blocked from her credit file.

53. On July 11, 2024, Defendant Trans Union responded to Plaintiff's dispute.

54. After reviewing the dispute results, Plaintiff stated that all the inaccurate information had been removed.

55. However, on August 2, 2024, Defendant Trans Union issued a letter that explained that the WEBBANK/FINGERHUT account was reinserted, because it "has been verified."

56. Upon information and belief, Defendant Trans Union sent to Defendant WebBank an automated credit dispute verification ("ACDV") pursuant to Plaintiff's July 2024, dispute to Defendant Trans Union.

57. Upon information and belief, Defendant WebBank received Defendant Trans Union's ACDV and failed to adequately investigate Plaintiff's dispute.

58. On or about September 2, 2024, Plaintiff obtained a copy of her Trans Union consumer report.

59. Upon review, Plaintiff was shocked to find that besides the reinserted WEBBANK/FINGERHUT tradeline, Defendant Trans Union was also reporting the

WEBBANK/GETTINGTON tradeline.

### WebBank's Unreasonable Dispute Investigations

60. Upon information and belief, Defendant WebBank verified the disputed information as accurate in response to Defendant Equifax's ACDV(s) after failing to perform an adequate investigation.

61. Upon information and belief, Defendant WebBank verified the disputed information as accurate in response to Defendant Experian's ACDV(s) after failing to perform an adequate investigation.

62. Upon information and belief, Defendant WebBank verified the disputed information as accurate in response to Defendant Trans Union's ACDV(s) after failing to perform an adequate investigation.

63. By contrast, all the other tradelines Plaintiff disputed were deleted—indicating that those furnishers performed adequate and reasonable investigations that reached the correct result, unlike WebBank.

### Damages

64. Plaintiff's consumer reports with each CRA Defendant, bearing the false information, were published to third parties, including Plaintiff's potential creditors.

65. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the information which were the product of identity theft; and the expenditure of labor and effort disputing and trying to remove the information which were the product of identity theft.

66. Plaintiff has also had to deal with small claims litigation regarding certain

fraudulent accounts that were reported, further exacerbating the stress of the situation and lost time.

67. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft.

68. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, and/or reckless, and in disregard of federal law and the rights of Plaintiff herein.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Each CRA Defendant)

69. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

70. Each CRA Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure "maximum possible accuracy" in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

71. Each CRA Defendant's separate and independent violations were willful, rendering each CRA Defendant liable for actual and/or statutory damages, as well as punitive damages in an

amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

72. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
(Second Claim for Relief Against Each CRA Defendant)

73. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

74. Each CRA Defendant violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

75. Each CRA Defendant's separate and independent violations were willful, rendering each CRA Defendant liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

76. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
(Third Claim for Relief Against Each CRA Defendant)

77. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

78. Each CRA Defendant violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information, caused by identity theft, from Plaintiff's file.

79. Each CRA Defendant's violations were willful, rendering each CRA Defendant liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, each CRA Defendant's violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

80. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. § 1681s-2(b)**
**Failure to Reasonably Investigate Dispute and Review all Relevant Information Provided by the Consumer**
**(Only Claim for Relief Against Defendant WebBank)**

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

82. Defendant WebBank violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s); by failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the CRA Defendants; and by failing to cease furnishing inaccurate information relating to Plaintiff to the CRA Defendants.

83. Defendant WebBank's violations were willful, rendering Defendant WebBank liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.  Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84. Plaintiff is entitled to recover attorneys' fees and costs from Defendant WebBank in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that each Defendant negligently and/or willfully violated the FCRA;

ii. Awarding against each Defendant actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA;

iv. Ordering the CRA Defendants to:

   a. immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom any CRA Defendant reported consumer credit information; and

   b. send updated and corrected credit report information to all persons and entities to whom any CRA Defendant reported inaccurate information about Plaintiff within the last three years; and

v. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 20, 2025,

/s/ Emanuel Kataev
Emanuel Kataev, Esq.
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing NY 11367

                              T: (718) 412-2421 (office)
                              F: (718) 489-4155 (facsimile)
                              E: ekataev@consumerattorneys.com (e-mail)

*Attorneys for Plaintiff*
*Jill Edwards*